UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RAYMOND INOUE,<br><br>               Petitioner,<br><br>  v.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>               Respondent. | Case No. 2:17-cv-03134-JAD-PAL<br><br>**ORDER**<br><br>(Receipt of Initiating Docs. – ECF No. 1) |

       This matter is before the court on Petitioner Raymond Inoue's initiating document (ECF No. 1), which he calls "Petitioners Request for a Writ of Stay." Inoue names Immigration and Customs Enforcement ("ICE") as the respondent. This proceeding is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice. The court has addressed the petition on an expedited basis because Mr. Inoue, who is currently in custody at Southern Desert Correctional Center in Indian Springs, Nevada, states he has an ICE detainer and is about to be taken into ICE custody on his parole date of January 26, 2018.

       Mr. Inoue is proceeding in this action *pro se*, which means that he is not represented by an attorney. *See* LSR 2-1. He filed his petition but did not pay the standard filing fee or submit an application to proceed *in forma pauperis* ("IFP") in this case. Pursuant to 28 U.S.C. § 1914(a) and the Judicial Conference Schedule of Fees, a $400 filing fee is required to commence a civil action in a federal district court. The court may authorize a prisoner to begin an action without prepaying fees and costs when a prisoner submits an IFP application on the court's form along with the appropriate supporting documentation. *See* 28 U.S.C. § 1915(a); LSR 1-1, LSR 1-2.[1]

---

[1] The $400 filing fee consists of a $350 base fee and a $50 administrative fee. Pursuant to the court's Schedule of Fees, the $50 administrative fee does not apply to prisoners granted IFP status under 28 U.S.C.

In general, when a district court grants a prisoner IFP status, federal law states that "the prisoner shall be required to pay the full amount of the filing fee." 28 U.S.C. § 1915(b)(1). Prisoners must pay an initial partial filing fee of the greater of twenty percent (20%) of the average monthly deposits or twenty percent (20%) of the average monthly balance of his account for the six months immediately preceding the start of this action. 28 U.S.C. § 1915(b)(1). After the initial partial filing fee is paid, the facility having custody of the prisoner will forward payments from the prisoner's account each month. *See* 28 U.S.C. § 1915(b)(2). Plaintiff is therefore advised that even if this action is dismissed, he must still pay the full filing fee pursuant to § 1915(b) and the monthly payments from his inmate account will continue until the balance is paid. *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1051–52 (9th Cir. 2016); *Andrews v. Cervantes*, 493 F.3d 1047, 1051–52 (9th Cir. 2007). A prisoner's failure to pay the initial partial filing fee before the deadline stated in the court's order, which typically allow 30 days, "shall be cause for cause for dismissal of the case." LSR 1-3(c).

LSR 1-2 and § 1915 specifically require three items be submitted to this court with a prisoner's IFP application: (1) a financial certificate signed by an authorized officer of the institution in which he or she is incarcerated, (2) a copy of his or her inmate trust account statement for the six-month period prior to filing, and (3) a signed affidavit showing an inability to prepay fees and costs or give security for them. Additionally, LSR 1-1 states that a prisoner's IFP "application shall be made on the form provided by the court."

Here, Mr. Inoue submitted a petition as part of his initiating documents (ECF No. 1), but he did not pay the $400 filing fee or submit an IFP application along with the appropriate supporting documentation. The matter of the filing fee or request to proceed *in forma pauperis* without prepaying the fee could easily be addressed and remedied. However, from reviewing the petition, it appears that the court lacks subject matter jurisdiction to grant the relief requested. *See Nevada v. Bank of America Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (district courts "may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the

---

§ 1915. Thus, prisoners granted IFP status are only required to pay the $350 base fee, but may do so in instalment payments.

action"). The court would ordinarily defer review of the petition until Inoue had either paid the filing fee or filed a completed IFP application establishing that he qualifies to proceed without prepayment of the filing fee. However, as explained above, if he qualifies to proceed IFP and the case is dismissed after screening, he will still owe the entire $350 filing fee, which will be withdrawn from his inmate account until paid in full. If he pays the filing fee, it will not be refunded. The court will therefore give Inoue an opportunity to pay the filing fee, file a completed IFP application, or withdraw his petition.

## I. MR. INOUE'S PETITION

Inoue alleges he has an ICE detainer placed on him. He has been in the United States for over 20 years, has children born in the United States, and he is non-violent. He seeks a stay or political asylum in the United States because he alleges he will face certain death if he returns to the Philippines. He claims that on May 24, 2017, his only relative in the Philippines, his brother, was assassinated by the Church of Christ. If given the opportunity to remain in this country, Inoue states he will no longer be a threat to society but a productive member. He has an upcoming parole date of January 26, 2018, when he will be transported to federal custody based on the ICE detainer. He believes this is unconstitutional. For the reasons discussed below, the court finds that the petition fails to state a proper basis for the court to exercise subject matter jurisdiction.

## II. LEGAL STANDARDS AND ANALYSIS

Federal courts are courts of limited jurisdiction, which means they may only adjudicate certain cases as authorized by the Constitution and by Congress. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A federal district court is obligated to ensure it has jurisdiction over an action, and once it determines it lacks jurisdiction, it has no further power to act." *Guerra v. Hertz Corp.*, 504 F. Supp. 2d 1014, 1017–18 (D. Nev. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). A court is "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001). A district court may raise the issue of subject matter jurisdiction on its own

accord and must dismiss a case if no subject matter jurisdiction exists. Fed. R. Civ. P. 12(h). Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).

An immigration detainer issued by ICE, an agency of the Department of Homeland Security ("DHS"), is the principal mechanism for ICE officials to obtain custody of a suspected immigration violator in the custody of any other federal, state, or local law enforcement agency. *See* 8 C.F.R. § 287.7. When ICE learns that a suspected immigration violator is in a state or federal prison or local jail, an "Immigration Detainer–Notice of Action" is lodged with the law enforcement agency holding the non-citizen in custody. A detainer serves to advise another law enforcement agency that DHS seeks custody of a non-citizen presently in the custody of that agency, "for the purpose of arresting and removing" that individual. 8 C.F.R. § 287.7(a). The detainer is a request that the agency advise DHS, prior to the individual's release, so DHS may arrange to assume custody. If law enforcement informs ICE that a non-citizen is in custody on non-immigration related charges, ICE may issue a detainer requesting that the law enforcement agency hold the individual for up to 48 hours beyond the time the individual would otherwise be released in order to allow ICE to assume custody, if officials choose to do so. An ICE detainer is not a mandatory command to detain a non-citizen but instead is a request to detain a non-citizen for a period not to exceed 48 hours. *Galarza v. Szalczyk*, 745 F.3d 634, 640–42 (3d Cir. 2014). ICE may or may not take a non-citizen into custody for the purpose of starting proceedings to remove (*i.e.*, deport) that individual from the United States. *Cf. United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012).

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, DHS can seek to remove non-citizens from the United States through several different means. *See Gomez-Velazco v. Sessions*, -- F.3d ---, 2018 WL 343752, at *1 (9th Cir. Jan. 10, 2018). The most formal process involves a hearing in immigration court before an immigration judge, during which the individual to be removed can contest the charges against him or her and request various forms of

relief from removal. *See* 8 U.S.C. § 1229a. However, most non-citizens are ordered removed through streamlined administrative proceedings that do not involve a hearing before an immigration judge. *Gomez-Velazco*, 2018 WL 343752, at *1 (citation omitted). The Ninth Circuit recently provided a summary of how administrative removal proceedings work in *Gomez-Velazco*. 2018 WL 343752, at *2 (discussing 8 U.S.C. § 1228(b)). The administrative proceedings are conducted by immigration enforcement officers. *Id*. at *2. Although such proceedings are summary in nature, they afford non-citizens due process. *Id*.; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). In addition, administrative proceedings provide a non-citizen an opportunity to request cancelation of removal or asylum if he or she has a reasonable fear of persecution or torture in the country to which he or she would be removed. *Gomez-Velazco*, 2018 WL 343752, at *2. If the government establishes its case for removal, an immigration enforcement officer will issue a "Final Administrative Removal Order." 8 C.F.R. § 238.1(d).

The REAL ID Act of 2005, Pub. L. No. 109-13 Div. B, 119 Stat. 231, amended the INA to severely limit judicial review of removal orders. *See* 3A Am. Jur. 2d Aliens and Citizens § 33. A primary goal of the amendments to the INA was to ensure and expedite the removal of non-citizens convicted of serious crimes. *See Duvall v. Atty. Gen. of United States*, 436 F.3d 382 (3d Cir. 2006). The REAL ID Act eliminated the federal district courts' jurisdiction to review decisions to remove non-citizens and vested jurisdiction solely in the court of appeals with limited exceptions. *See, e.g.*, *Flores–Torres v. Mukasey*, 548 F.3d 708, 710–11 (9th Cir. 2008); *Iasu v. Smith*, 511 F.3d 881, 886 (9th Cir. 2007). In short, this court lacks jurisdiction over petitions seeking to challenge removal orders. *See* 8 U.S.C. § 1252.

Additionally, judicial review of DHS removal proceedings is only available when a final order of removal has been entered. ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions," arising from any removal action or proceeding is "available *only* in judicial review *of a final order*."). 8 U.S.C. § 1252(b)(9) (emphasis added). The "sole and exclusive" method for obtaining judicial review of a removal

order is by filing a petition in the appropriate court of appeals. 8 U.S.C. § 1252(a)(5);[2] *Iasu*, 511 F.3d at 884, 893. However, § 1252 does not preclude jurisdiction in all circumstances—only in those cases in which a final order of removal is challenged. *Flores-Torres*, 548 F.3d at 711 (quoting *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006)). In limited circumstances, non-citizens may bring collateral legal challenges to DHS's detention authority through a petition for habeas corpus. *Id.* (quoting *Casas-Castrillon v. Dep't. of Homeland Security*, 535 F.3d 942, 946 (9th Cir. 2008)); 8 U.S.C. § 1252(e)(2) (stating a narrow list of situations in which habeas corpus proceedings are available).

Here, Mr. Inoue's petition fails to demonstrate that the court has jurisdiction over this case. Inoue alleges in conclusory fashion that his transport to federal custody will be unconstitutional. The petition does not indicate whether he has been given notice of an ICE Detainer-Notice of Action, or whether he is subject to a final order of removal. As explained, judicial review is only available after a final order of removal and must be filed with the appropriate court of appeals, not the district court. The district court does not have jurisdiction to grant relief from removal. *See* 8 U.S.C. §§ § 1228(b), 1229a, 1252(a). Federal law requires Inoue to challenge removal or request asylum in the immigration court or administrative proceedings, or seek judicial review of a removal order in the court of appeals. *See Gomez-Velazco*, 2018 WL 343752, at *1–2; *Iasu*, 511 F.3d at 886 ("Congress' clear intent [was] to have all challenges to removal orders heard in a single forum (the courts of appeals).") (citations omitted)). The petition does not assert an exception to the INA's statutory provisions or companion regulations.

The court would ordinarily require Inoue to pay the filing fee, or file an IFP application before reviewing his petition. However, because the court seriously doubts he can establish the court has subject matter jurisdiction over his petition, the court will permit him to withdraw his petition to avoid being assessed the entire filing fee should his petition be dismissed after screening. Alternatively, he may either pay the filing fee or file a completed IFP application, and

---

[2] In relevant part, the INA states that a "petition for review filed with an appropriate court of appeals in accordance with this section shall be the *sole and exclusive means for judicial review of an order of removal*," with limited exceptions. 8 U.S.C. § 1252(a)(5) (emphasis added). The District of Nevada is located within the Ninth Circuit Court of Appeals.

1 | the court will screen his petition to determine whether it states a claim on which relief may be granted by this court.

Mr. Inoue must prepay the filing fee or submit an IFP application along with the correct supporting documents on or before February 16, 2018, if he wishes to proceed. However, Inoue is advised that even if he does, the court must still screen his complaint to determine if it states a valid claim for relief. *See* 28 U.S.C. § 1915A ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a governmental entity").

**IT IS ORDERED:**

1. The Clerk of Court shall MAIL Petitioner Raymond Inoue one blank IFP application for incarcerated litigants and civil rights complaint pursuant to 42 U.S.C. § 1983.
2. Mr. Inoue is advised that he must immediately file with the court written notification of any change of mailing address and contact information, and his failure to comply may result in sanctions, including dismissal of the action. LR IA 3-1; LSR 2-2; *see Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988).
3. If Mr. Inoue decides to move forward with the case, he shall submit an IFP application, accompanied by a signed and executed financial certificate, a signed and executed financial affidavit, and a statement of his inmate trust account on or before **February 16, 2018**.
4. Alternatively, Mr. Inoue shall pay the $400 filing fee on or before **February 16, 2018**.
5. Alternatively, Mr. Inoue may file a brief statement on or before **February 16, 2018**, indicating that he wishes to withdraw his petition at this time, in which case the filing fee need not be paid nor a completed application filed and the case will be closed.

///
///
///
///

7

6. Mr. Inoue's failure to comply with this Order on or before **February 16, 2018**, by: (a) submitting a new IFP application, (b) paying the filing fee, or (c) filing a statement indicating he wished to withdraw his petition, will result in a recommendation to the district judge that this case be dismissed.

Dated this 17th day of January, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE